## COZART *v.* JOHNSON *et al.,* trustees.

338

No. 10941.   October 18, 1935.

*W. A. Slaton,* for plaintiff.   *Earle Norman,* for defendants.

Bell, Justice.   Mrs. F. A. Cozart filed suit alleging the following facts: For several years the Citizens National Bank occupied, as a tenant of the plaintiff, a building in Washington, Georgia, where it conducted its banking business.   On or about January 26, 1926, the bank ceased to do business, and appointed R. R. Johnson and other named persons as trustees for such of its assets as were not sold and delivered to the National Bank of Wilkes, and at the same time abandoned the occupancy and tenancy of the plaintiff's building.   The plaintiff then took possession of the building and the entire premises, including such fixtures as were left therein by Citizens National Bank as tenant.   She immediately rented the building to other tenants, through whom she continued in possession of the building and fixtures until about March 1, 1934, when the Maryland Casualty Company desired to purchase a money safe which had been left in the building by the Citizens National Bank, but refused to buy it unless and until the plaintiff and "said trustees" of the bank should jointly convey the property. The trustees and the plaintiff both agreed to do this, and "sold said safe to said Maryland Casualty Company for the sum of $162.50, it being understood and agreed between all the parties that said sum should be paid to your petitioner and said trustees jointly, that said Maryland Casualty Company should be relieved from any question of the ownership of said safe, and that your petitioner and

said trustees should determine for themselves the relative rights of the parties." On the payment of this sum by the casualty company, the fund was "deposited in Washington Loan & Banking Company subject to the final determination of the question whether or not the right and title to said safe was in your petitioner or was in said trustees, and said fund is now in said bank, and said trustees have failed and refused to deliver the same to your petitioner." The plaintiff claimed title to the safe upon two grounds: (1) that in vacating the building the Citizens National Bank had the right to remove the safe as a fixture; but having abandoned the possession of the building and "left said fixture in said building, it became by such abandonment the property of your petitioner." (2) If the safe did not become the property of the plaintiff by abandonment, she has acquired the legal title thereto by adverse possession for more than four years. For each of these reasons, the plaintiff claims title to the proceeds of the sale. Although the purchase-money was deposited in Washington Loan & Banking Company subject to the rights of the adverse claimants, the depositary was not made a party to the suit, the trustees of the Citizens National Bank being the only persons named as defendants. The plaintiff prayed that the court decree in whom the title to the safe vested, and direct payment of the purchase-price to the true owner; and that all persons claiming any right or title in the safe be permitted to intervene herein and set up their rights. The trustees filed an answer in which they denied the material allegations of the petition, and pleaded that under the terms of a contract entered into on January 25, 1926, between Citizens National Bank and National Bank of Wilkes, the latter bank held a first lien on the safe for the purpose of securing a debt of the Citizens National Bank, and that the fund derived from the sale of such property should in equity become the property of National Bank of Wilkes. A copy of the agreement was attached as an exhibit.

In the meantime the National Bank of Wilkes had failed, and John C. Lewis had been appointed receiver to liquidate its affairs. He was permitted, without objection, to intervene and to file an answer, which in substance was the same as that filed by the trustees. The contract between the two banks, referred to in each answer, provided that the National Bank of Wilkes would assume and pay off the liabilities of the Citizens National Bank in consid-

cration of a sufficient amount of assets to reimburse it in full for the obligations assumed, and that until it should be determined whether the assets selected and conveyed were sufficient for that purpose the Citizens National Bank "doth hereby convey to and create a lien in favor of such second party, which shall be a first lien on same as is given to secure a debt, on all the other remaining assets of the Citizens National Bank, which lien is given to secure the second party as to any and every liability assumed by them, which the assets first selected may be insufficient to cover." The receiver as intervenor, contending that there was liability to him under this contract and that as receiver he had a lien on the safe as security therefor, prayed for a decree declaring that the right to the fund was in him as receiver and directing that payment be made to him accordingly. He prayed also that he have such other and further relief as might in the nature of the case be just and equitable. The plaintiff moved to strike so much of the answer of the trustees as referred to the contract between the two banks and to the lien alleged to have been created thereby in favor of the National Bank of Wilkes, on the grounds that this part of the answer did not set forth any legal defense to the plaintiff's suit; that the contract attached thereto as an exhibit was insufficient to create a lien in favor of the National Bank of Wilkes, because it did not describe the safe on which the lien was claimed; that the contract had not been recorded, and there was no allegation in the answer that the plaintiff had any notice or knowledge of such contract or of any claim based thereon by the National Bank of Wilkes. This motion was overruled, and the plaintiff excepted pendente lite.

The jury rendered a verdict "for the defendant." The plaintiff's motion for new trial was overruled, and she excepted. The motion contained the general grounds and five special grounds. Special ground 1 complained of the admission in evidence of the contract referred to in the answer of the trustees and in the answer filed by the intervenor, the objections being substantially the same as those stated in the motion to strike a portion of the answer of the trustees, as indicated above. Special ground 2 complained of the admission in evidence of a deed from the Citizens National Bank to National Bank of Wilkes, dated January 30, 1926, conveying certain tracts of land for a stated consideration, in pursu-

ance of the contract of January 25, 1926, between these banks. The introduction of the deed was objected to on the ground that it did not purport to convey the safe in question, and was not relevant to any issue in the case. Ground 3 complained of the admission of a note from the Citizens National Bank to the National Bank of Wilkes for about $13,000, with certain credits entered thereon, over objection that it was irrelevant and immaterial. Ground 4 assigned error on the following charge of the court: "Permissive possession can not be the foundation of a prescription until an adverse claim and actual notice to the other party. Now just in this connection I call your attention to the fact that it is one of the contentions of the defendants in this case that if Mrs. Cozart had been in possession of this property, that it was permissive possession on the part of the Citizens National Bank, and that that possession did not ripen into a prescription, because, as they contend, Mrs. Cozart, or her agent, never did inform them that they were claiming under an adverse claim of right." Ground 5 assigned error on the following instruction: "I charge you that if you should believe that this safe was left in the possession of Mrs. Cozart by permission of the Citizens National Bank, and that Mrs. Cozart did not give the Citizens National Bank any notice that she was claiming this property adversely, why, in that event, I charge you that the defendants would be entitled to recover." Each of the two instructions just quoted was excepted to on the following grounds: (a) There was no evidence of permissive possession by the plaintiff. The Citizens National Bank vacated the plaintiff's building and left the safe in the building without any agreement with reference thereto; and from these circumstances it followed, as a matter of law, that the property was abandoned by the tenant to the plaintiff as landlord, and no notice of adverse possession by the latter was necessary in order for such possession to ripen into title by prescription. (b) The pleadings of defendants did not allege such a state of facts as would require notice from the plaintiff that she was claiming the safe as her property, in order for prescription to begin to run in her favor. (c) The charge was an expression of opinion by the court that the evidence had established such a state of facts as would require the plaintiff to give notice of such claim. (d) "Because as matter of law, where a tenant occupies a building and removes therefrom and leaves his

property in the building, and the landlord takes possession of the building, and there is no agreement whatever between the landlord and the tenant about the property left in the building by the tenant, the landlord is not required to give notice to the tenant in order to claim the property, or for the possession of the landlord to ripen into prescriptive title as against the tenant or any other person." (e) The charge excepted to was in direct conflict with another portion of the charge to the effect that adverse possession of the safe for four years would give the plaintiff good title by prescription. The court did not withdraw the charges complained of, or give the jury any rule by which to apply the one instruction rather than the other to the facts of the case, and the giving of the two conflicting charges was confusing and erroneous.

The evidence established the tenancy, the tenant's removal, and the leaving of the safe in the plaintiff's building, as alleged. There was no evidence of an express agreement touching the rights of the parties with respect to the safe, although it appeared that the trustees and their representatives were permitted to enter the building, and the vault containing the safe, for some time following the tenant's removal from the building. The safe remained in the vault, in the possession of the plaintiff's subsequent tenants for the period stated in the petition; but there was nothing to show any notice of adverse possession. The safe was finally sold, and the proceeds deposited, under the circumstances alleged. With reference to the nature of the safe and its connection with the building, the evidence was as follows: The vault "was contracted" and "went into Mrs. Cozart's building." The vault was not "burglar-proof," and the tenant bought what was thought to be the best safe of its kind for the protection of its money and securities. The safe stood upon rollers attached to it at the bottom, and on which, "with two or three to push," it was movable at pleasure. It was purchased "as is," and rolled into the vault, and "just sat in there." It was not attached to anything. There was some evidence that it was necessary to remove the door from the safe in order to place it within the vault or take it out, but it was unnecessary to remove the door of the vault, or otherwise to injure or interfere with any part of the plaintiff's building.

Since the safe was not attached to the building and was movable at pleasure upon its rollers, with no injury to any part of the

building, it may have been a mere chattel, incapable as a matter of law of becoming a trade-fixture, as between the landlord and tenant, in the absence of any agreement to give it character as such a fixture. Code of 1933, §§ 85-105, 85-1701; *Wade* v. *Johnston,* 25 *Ga.* 331; *Smith* v. *Odom,* 63 *Ga.* 499; *Sawyer* v. *Foremost Dairy Products Inc.,* 179 *Ga.* 809 (177 S. E. 584); *Holland Furnace Co.* v. *Lowe,* 172 *Ga.* 815 (2) (159 S. E. 277); *Armour* v. *Block,* 147 *Ga.* 639, 642 (95 S. E. 228); 11 R. C. L. 1088; 26 C. J. 696, § 82. But this is a question which we need not decide, because the evidence did not demand a finding that the safe was a fixture, and it was found by the verdict to be a chattel, under instructions which submitted the issue as one of fact for the jury, and to which particular instructions no exceptions were taken. *Pendley Brick Co.* v. *Hardwick Co.,* 6 *Ga. App.* 114 (64 S. E. 664), and cit. The rule that, after the tenant's term and possession are ended, fixtures are regarded as abandoned to the use of the landlord and become the latter's property, has no application to personalty which has not become a fixture. Code of 1933, § 61-110; *Youngblood* v. *Eubank,* 68 *Ga.* 630; *Wright* v. *DuBignon,* 114 *Ga.* 765 (40 S. E. 747, 57 L. R. A. 669); *Georgia Railroad &c. Co.* v. *Haas,* 127 *Ga.* 187 (3) (56 S. E. 313, 119 Am. St. R. 327, 9 Ann. Cas. 677); Opperman *v.* Littlejohn, 98 Miss. 636 (54 So. 77, 35 L. R. A. (N. S.) 707). Such personalty remains the property of the tenant; and though it may be left in the building, it is not by that fact alone to be treated as abandoned to the landlord. 36 C. J. 63, 64, §§ 681-684; 16 R. C. L. 1106-1157, §§ 624-648. In such case the possession of the landlord is permissive, and "can not be the foundation of a prescription, until an adverse claim and actual notice to the other party." Code of 1933, § 85-402.

Now, to examine first the exceptions to the charge of the court, and to consider these in the light of the foregoing principles, it is clear that the excerpts complained of were not erroneous for any reason urged. In the circumstances, it can not be said that these charges relating to permissive possession were unwarranted by the pleadings or the evidence, or that they were improper merely because it may be true as matter of law, which is assumed for the purposes of this case, that, without any notice of claim by the landlord, a tenant abandons such trade fixtures as he leaves in the building on his removal from the premises. As stated above, the evidence

did not demand a finding that this safe was a trade-fixture as distinguished from a chattel, but authorized, if it did not demand, a finding that it was a chattel as distinguished from a trade-fixture. The evidence thus warranted the charges on permissive possession. What has just been said will dispose of all of the exceptions to the charge, except those relating to the alleged conflict in the charges on the acquirement of prescriptive title by adverse possession, and to the alleged expression of opinion on the evidence. Under the same principles, these latter exceptions were equally without merit.

A contract between the Citizens National Bank and the National Bank of Wilkes, purporting to create a lien in favor of the latter bank, was admitted in evidence over objection that the description of the property was insufficient to include the safe, and that the contract was not recorded. A deed and a note from the former to the latter bank were admitted over objection that these documents were irrelevant and immaterial. We do not pass upon the technical correctness of any of these rulings, it appearing from the record that, even if erroneous, they were harmless to the plaintiff. The transcript of the court's charge discloses that although at the outset the judge stated the contentions of the plaintiff and the trustees as expressed in the pleadings, all later instructions, with one exception explaining the effect of a verdict for the defendants, were confined to the questions of abandonment and prescription, without reference to any contention pertaining to the evidence so admitted over objection, and without in any manner qualifying the plaintiff's right of recovery by the facts shown by such evidence. For illustration, the concluding portion of the charge was as follows: "I charge you, gentlemen, if you believe under the evidence, facts and circumstances of this case, that the contentions of the plaintiff are correct, that is, if you should believe, under the evidence, facts and circumstances of this case, that this safe was a fixture, in accordance with the rules of law that I have given you in charge, and that it was left there in the building at the time it was vacated by Citizens National Bank, why, in that event, I charge you that the plaintiff would be entitled to recover the proceeds arising from the sale of this safe. I also charge you, gentlemen, that if you should believe, under the evidence, facts and circumstances of this case, after applying the rules of law as given you thereto in charge, that the plaintiff has acquired title by adverse possession

governed by the principles of law which I have just stated, and that that possession has been such as defined to you in the sections of the Code which I have just read you, for more than four years, why I charge you that plaintiff would be entitled to recover the proceeds arising from the sale of the safe in question, and it would be your duty to render a verdict in favor of the plaintiff. If you should find in favor of the plaintiff, Mrs. Cozart, the form of your verdict would be: 'We, the jury, find in favor of the plaintiff,' which would mean that she is entitled to the proceeds arising from the sale of this safe. On the other hand, if you should believe, under the evidence, facts and circumstances of this case, that the contentions of the defendants are correct, that is, if you should believe that this property was not a fixture, was not such a fixture as I have defined to you, or if you should believe that Mrs. Cozart did not acquire title by adverse possession in accordance with the principles of law which I have given you in charge, why, in that event, it would be your duty to return a verdict in favor of the defendants. In this connection I charge you that if you should believe that this safe was left in the possession of Mrs. Cozart by permission of the Citizens National Bank, and that Mrs. Cozart did not give the Citizens National Bank any notice that she was claiming this property adversely, why, in that event, I charge you that the defendants would be entitled to recover; and in the event you find in favor of the defendants in this case, the form of your verdict would be: 'We, the jury, find in favor of the defendants,' which would mean that the money in question would go to the National Bank of Wilkes, to be applied on this indebtedness that was due by the Citizens National Bank to the National Bank of Wilkes." The statement that a verdict for the defendants would mean that the money in question would go to the National Bank of Wilkes, to be applied on the indebtedness due to it by the Citizens National Bank, did not authorize the jury to consider the evidence which had been admitted over objection, in determining whether to find for the defendants, and the charge as a whole did not permit such evidence to affect the question of the plaintiff's right to recover upon either of the two theories advanced by her. If the jury heeded the charge of the court, as presumably they did, they could not have considered this evidence in passing upon the questions of abandonment and prescription. It is plain from the

record that the verdict for the defendants was not predicated upon the evidence to which the plaintiff made objection, and thus that its admission was not cause for a new trial. *East Tenn., Va. & Ga. Ry. Co.* v. *Warmack,* 86 *Ga.* 351 (4) (12 S. E. 813); *Burch* v. *Americus Grocery Co.,* 125 *Ga.* 153 (53 S. E. 1008); *Daughtry* v. *Savannah & Statesboro Ry. Co.,* 1 *Ga. App.* 393 (2) (58 S. E. 230). The same reasoning will apply to the refusal of the court to strike so much of the answer of the trustees as pleaded the existence of the contract which purported to create a lien in favor of the National Bank of Wilkes. Cf. *Fidelity & Deposit Co.* v. *Norwood,* 38 *Ga. App.* 534 (144 S. E. 387). The evidence authorized the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Russell, C. J., absent because of illness.*