[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————

No. 13-15183

————————

D.C. Docket No.  4:12-cv-00042-CDL

JAMIE ROURK,

Plaintiff - Appellant,

versus

BANK OF AMERICAN NATIONAL
ASSOCIATION,

Defendant - Appellee.

————————

Appeal from the United States District Court
for the Middle District of Georgia

————————

(September 30, 2014)

Before MARTIN, Circuit Judge, and RESTANI,[*] Judge, and HINKLE,[**] District
Judge.

---

[*] Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by
designation.

[**] Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida,
sitting by designation.

PER CURIAM:

Appellant Jamie Rourk appeals from the district court's grant of summary judgment against her on all claims stemming from Appellee Bank of America National Association's ("BANA") actions with respect to a mortgage it held on Rourk's home. The district court held that Rourk's failure to make any payment on her mortgage for over two years caused her default and put her into foreclosure. Because we agree that any damages stem from Rourk's own default, we affirm.[1]

Rourk argues that BANA was the first party to breach the note and deed when it failed to apply payments made during Rourk's bankruptcy properly, rejected Rourk's post-bankruptcy April to July 2010 payments, and sent conflicting reinstatement letters. Rourk contends BANA's breach caused her inability to tender payments and excused her subsequent breaches because, although she was willing to "pay whatever amounts were due," she "could not reasonably determine on her own the amount needed to cure her default and avoid foreclosure."

BANA responds that even if it breached the note and deed during Rourk's bankruptcy, it cured any breach when it made Rourk's account current in August 2010, and Rourk's subsequent default by failing to make any payment for almost two years cuts off any potential claim for damages. We agree.

---

[1] The district court had jurisdiction under 28 U.S.C. §§ 1331, 1332(a). We have jurisdiction under 28 U.S.C. § 1291, and we review the district court's grant of summary judgment de novo. See Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000).

2

Under Georgia law, a borrower may not withhold mortgage payments, even when there is a good faith dispute as to the amount owed.  Mitchell v. Interbay Funding, LLC, 630 S.E.2d 909, 911 (Ga. 2006) ("[E]ven if a bona fide controversy existed as to liability for this additional amount, the [borrowers] were obligated to pay the monthly sum they admittedly owed under the promissory note."); see Grebel v. Prince, 501 S.E.2d 538, 542 (Ga. 1998) ("Where there is bona fide controversy over amount required to satisfy debtor's obligation, debtor should be required to tender only such sums as are admittedly due under the note, not all sums which may be claimed by creditor as is due." (internal quotation marks and brackets omitted)).

Although tender of mortgage payments, like other contractual obligations may be excused, such excuse is permitted only under limited circumstances: "If the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance."  Ga. Code Ann. § 13-4-23 (2013); see Grebel, 501 S.E.2d at 542 ("[T]ender is unnecessary where the person to whom the money is due states that the tender would be refused if made").  Under this standard, the non-breaching party's performance must have been rendered "useless or impossible" in order to be excused.  Ott v. Vineville Mkt., Ltd., 416 S.E.2d 362, 363 (Ga. Ct. App. 1992); see L.D.F. Family Farm, Inc. v. Charterbank, 756 S.E.2d 593, 598 (Ga. Ct. App. 2014) (holding that a debtor's

3

nonperformance must have been caused by the conduct of the lender, which made performance useless or impossible); see also Moody Nat'l RI Atlanta H, LLC v. RLJ III Fin. Atlanta, LLC, No. 1:09-cv-3676-WSD, 2010 WL 163296 (N.D. Ga. Jan. 14, 2010) (rejecting mortgagor's argument that mortgagee's demand of default interest caused and excused mortgagor's nonperformance in not making a timely payment, stating that mortgagor "took a calculated risk by not making a timely payment, knowing that doing so was a breach of the Note").

Under Mitchell, Rourk had an obligation to pay at least what she admittedly owed, that is at least her monthly $394.83 payments.  Rourk's nonperformance cannot be excused by the bank's alleged breaches in the past.  First, the bank cured any potential breach caused by mishandling Rourk's account during her bankruptcy[2] or in rejecting her post-bankruptcy payments when it made her account current as of April 2010, effective August 16, 2010.[3]  Second, the bank never indicated definitively that it would not accept Rourk's payments, even if they were less than what she actually owed.  The sole reason it had rejected previous payments was because they were not made with certified funds, not because they

_____

[2] Because there is no evidence that BANA did not apply each payment made during bankruptcy and in fact later provided Rourk with an additional credit for her escrow deficiency, Rourk's claim of conversion touching these issues fails as a matter of law.  To the extent her conversion claim goes to proceeds of the foreclosure sale, Rourk presented no evidence and failed to make a developed argument in her brief that there were any proceeds from the foreclosure sale or that BANA unlawfully retained them.

[3] Although Rourk received conflicting reinstatement amounts, these were all before the August 16, 2010, "reset date."  Apparently, although some past monthly payments were still due, Rourk was not considered to be in default as of that date.

4

were partial payments.

The cases Rourk relies upon do not contradict <u>Mitchell</u>.  The court in <u>Grebel</u> held that even if the borrower's tender was insufficient before the foreclosure, it did not bar his claim to set aside the foreclosure sale as wrongful, because where there is a bona fide controversy as to the amount of debt owed, the borrower is required to tender only the amount admittedly due, not what the creditor claims is due.  501 S.E.2d at 539, 542.  Unlike here, in <u>Grebel</u>, the borrower tendered the undisputed amount owed, but refused to pay $50,000 in unearned interest.  <u>Id.</u>  The loan provider refused to accept the tender, categorically stating that it would refuse any payment other than one that included the disputed interest.  <u>Id.</u> at 540.  Notably, the borrower in <u>Grebel</u> also tendered the undisputed amount to the court.  <u>Id.</u> at 539.

Similarly, Rourk's reliance on <u>Catalan v. GMAC Mortg. Corp.</u>, 629 F.3d 676, 692 (7th Cir. 2011), is misplaced.  In <u>Catalan</u>, borrowers who were not notified of a transfer of their loan to another loan servicer continued to make their monthly payments to the former loan servicer, and they delayed a single monthly payment when their previous payment was refused.  629 F.3d at 681–92.  The borrowers then timely paid the reinstatement amount the new loan servicer provided them, plus additional funds.  <u>Id.</u> at 691–92.  The <u>Catalan</u> court held there was an issue of fact as to whether the borrower's late payment was excused by the

bank's breach.  Id.  Catalan is distinguishable in that the borrowers in that case continued to make their payments and paid the amount specified to bring their account current.  Rourk, by contrast, failed to attempt to make any payments after August 2010.  Even if Rourk was confused as to the exact amount due, Rourk knew that at the very least she owed the April through July 2010 payments and $394.83 per month after her account was made current in August.

Under these circumstances, Rourk had an obligation to continue making payments she knew she owed, and Rourk's nonpayment is fatal to her claim for breach of contract and wrongful foreclosure, as her "alleged injury was solely attributable to [her] own acts or omissions."  Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E.2d 842, 845 (Ga. Ct. App. 2004).  The same holds true of her claim under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)(2) (2010), because even if BANA failed to properly respond to an adequate qualified written request, which we do not decide, such a failure in no way prevented Rourk from at least making the admittedly owed monthly payments.  Accordingly, the district court's grant of summary judgment in favor of BANA on all claims is

AFFIRMED.[4]

---

[4] Because we conclude that Rourk's failure to continue to make her monthly payments is fatal to her claims, we do not reach many of the legal issues briefed by the parties and discussed in the concurrently issued opinion in Bates v. JPMorgan Chase Bank, NA, No. 13-15340.